UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES M. BLAND III            )
                              )
        Plaintiff,             )
                              )
        v.                    ) Case No. 13-cv-491 (RJL)
                              )
JEH JOHNSON,                  )
                              )
        Defendant.            ) SEP 0 2 2014

MEMORANDUM OPINION
(September ___, 2014) [Dkt. #22]

James M. Bland III brings this suit against Jeh Johnson, Secretary of the United States Department of Homeland Security, in his official capacity,[1] alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. *See generally* Am. Compl. [Dkt. #20]. Defendant moves to dismiss the Amended Complaint as non-justiciable under *Department of Navy v. Egan*, 484 U.S. 518 (1988), which precludes courts and other non-expert bodies from reviewing the validity of security clearance decisions made by trained Executive Branch security personnel. Def.'s Mot. to Dismiss [Dkt. #22]. Upon consideration of the parties' pleadings, relevant law, and the entire record therein, the motion is GRANTED.

---

[1] Secretary Johnson was confirmed to his position in December 2013, and is appropriately substituted as the named defendant in this action. *See* Fed. R. Civ. P. 25(d).

1

## BACKGROUND

Mr. Bland, an African-American male, worked for the Federal Emergency Management Administration ("FEMA") as a Senior Special Agent for the Office of Chief Security Officer ("FEMA OCSO") from May 8, 2011, to March 30, 2012. Am. Compl. ¶¶ 6, 14. FEMA is a component of the Department of Homeland Security ("DHS"). Mr. Bland's position as a fraud investigator required that he obtain a Top Secret-Compartmented Secret Information ("TS-CSI") security clearance. *Id.* ¶ 19. When he first began in the position, the FEMA Personnel Security Branch granted Mr. Bland an interim secret clearance, *id.* ¶¶ 15-16, and Mr. Bland submitted the information necessary to process the permanent security clearance request, *id.* ¶ 20.

In the beginning of June, 2011, one or more FEMA officials complained that, in 2010, Mr. Bland had bribed FEMA's Chief Security Officer to contract with Bland's company for certain technology systems. *Id.* ¶¶ 22-23. Mr. Bland alleges that the official or officials who made the report were aware the allegations were false. *Id.* ¶ 24. The DHS Office of the Inspector General ("OIG") began investigating the allegations in late June 2011. *Id.* ¶¶ 30-35. Mr. Bland alleges that the OIG investigation did not "result[] in any evidence to support the originals [sic] allegations." *Id.* ¶ 32.

On July 1, 2011, FEMA management placed Mr. Bland on administrative leave, which involved, among other things, collecting his government identification card, badges, and credentials, and denying him access DHS/FEMA facilitates and communications systems. *Id.* ¶¶ 36-38. Mr. Bland alleges his colleagues were told he was guilty of criminal misconduct. *Id.* ¶ 97. The investigation was completed on July 6,

2

2011. *Id.* ¶ 53. It is unclear from the Complaint whether Mr. Bland returned to work from administrative leave upon completion of the investigation. Mr. Bland initiated an informal employment discrimination process at some point in July 2011. *Id.* ¶ 47.

On or around July 15, 2011, the FEMA Personnel Security Branch chief granted Mr. Bland TS-CSI clearance. *Id.* ¶ 54. Around two months later, on September 20, 2011, allegedly at the behest of FEMA management, the DHS Office of Chief Security Officer ("DHS OSCO") suspended Mr. Bland's security clearance.[2] *Id.* ¶¶ 66, 77. FEMA's "main expressed concern" involved a crime Mr. Bland committed over twelve years ago while in the Air Force, the nature of which the FEMA managers felt could not be mitigated. *Id.* ¶ 67. DHS OSCO proposed revoking Mr. Bland's clearance, but first offered him thirty days to respond. *Id.* ¶ 77. That same month, September 2011, Mr. Bland filed a formal administrative complaint charging the agency with discriminating against him on the basis of race and color. *Id.* ¶ 11.

On October 14, 2011, FEMA suspended Mr. Bland without pay, stating that he could not perform his job duties without a TS-CSI clearance. *Id.* ¶¶ 83-84. Mr. Bland alleges that TS-CSI clearance generally was not required for his duties as a fraud investigator, but rather would be a convenience if a need were to arise at a later point. *Id.* ¶ 86.

---

[2] On July 21, 2011, FEMA management reassigned the authority to adjudicate security clearances for FEMA OCSO employees from the FEMA Personnel Security Branch to the DHS Office of Chief Security Officer ("DHS OSCO"). Am. Compl. ¶ 57. Mr. Bland alleges that FEMA management first requested that the FEMA Personnel Security Branch revoke his clearance, but the Personnel Security Branch no longer had authority over the matter. *Id.* ¶¶ 59-64.

3

In November 2011, FEMA administratively subpoenaed bank records from Mr. Bland, his wife, and his previous consulting group; OIG also interviewed Mr. Bland again in January 2012, well after Mr. Bland alleges OIG was satisfied there was no basis for allegations of bribery. *Id.* ¶¶ 90-94. Mr. Bland resigned from FEMA on March 23, 2012. *Id.* ¶ 105.

On January 17, 2013, FEMA issued its decision in response to Mr. Bland's administrative complaint, declining to find discrimination. *Id.* ¶ 12. Mr. Bland now brings this action under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, alleging FEMA discriminated against him on the basis of his race. *Id.* ¶¶ 1, 3. He claims that FEMA's and DHS's actions regarding the corruption investigation and security clearance suspension were designed to create a pretext to force Mr. Bland, the only senior African-American Special Agent in his unit, out of his job. *Id.* ¶¶ 42-43, 75, 88.

Mr. Bland's Amended Complaint alleges he suffered five adverse employment actions, each styled as a different count: (I) Placement on Administrative Leave Based on Bogus Criminal Allegations; (II) Management Attempts to Have Clearance Revoked; (III) Suspension of Security Clearance; (IV) Suspension from Employment; and (V) Constructive Discharge. Am. Compl. He requests declaratory and injunctive relief, including reinstatement of his position and TS-CSI security clearance, as well as compensatory damages. Am. Compl. at 13-14 (Prayer for Relief). Defendant moves to dismiss the Amended Complaint as non-justiciable under *Department of Navy v. Egan*, 484 U.S. 518 (1988). Def.'s Mot. to Dismiss.

4

## STANDARD OF REVIEW

"A motion to dismiss claims as nonjusticiable is a motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Burns-Ramirez v. Napolitano*, 962 F. Supp. 2d 253, 255 (D.D.C. 2013). As such, the Court construes plaintiff's Amended Complaint liberally and grants plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (internal quotation marks omitted). However, the plaintiff bears the burden of demonstrating that jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008)

## ANALYSIS

The President, pursuant to his Article II power as Commander-in-Chief, has the "authority to classify and control access to information bearing on national security," and has delegated that authority to executive agencies through a series of Executive Orders. *Egan*, 484 U.S. at 527-28. Thus, "the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." *Id.* at 527. The agency at issue must have "broad discretion to determine who may have access to" classified information, and its "predictive judgments" cannot be subject to review by a non-expert body. *Id.* at 529; *see also id.* at 527 (explaining that the "strong presumption" in favor of judicial review of administrative decisions "runs aground when it encounters concerns of national security.").

Thus, federal courts do not have the authority to adjudicate cases that would require the fact-finder to second-guess the propriety of an agency's security clearance decisions. This includes Title VII actions when the agency asserts that an adverse employment action resulted from a security clearance decision. *See Ryan v. Reno*, 168 F.3d 520, 523 (D.C. Cir. 1999). In order for a court to find that discrimination or retaliation, rather than an agency's stated security clearance concerns, was the reason for an adverse employment action, the court would have to inquire into and pass judgment on the validity of the agency's security determinations, which *Egan* does not permit the court to do. *Id.* at 523-24. This is true "'[e]ven when the court faces independent evidence of a discriminatory motive, [because] it is still necessary to weigh the validity of the defendant's proffered reasons when deciding if they are pretextual." *Id.* at 524 (quoting *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 197 (9th Cir. 1995)).

### A. Count I

To begin, the Court dismisses Count I of the Amended Complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); Def. Mot. at 8 n.2. A plaintiff must plead that he suffered an adverse employment action in order to state a Title VII discrimination claim. *See Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003). In Count I, Mr. Bland alleges that he was placed on administrative leave because of the investigation into the bribery accusations. Am. Compl. ¶¶ 23-45. Unfortunately for Mr. Bland, being placed on paid administrative leave is *not* an adverse employment action sufficient to allege a Title VII discrimination claim, and Count I must

6

be dismissed accordingly.[3] See *Brown v. Georgetown Univ. Hosp. Medstar Health*, 828 F. Supp. 2d 1, 9 (D.D.C. 2011) (collecting cases).

B.   **Counts II, III, IV, and V**

Mr. Bland's remaining claims implicate FEMA and DHS's decisions regarding Mr. Bland's security clearance. Count II challenges FEMA management's requests that security personnel reconsider Mr. Bland's clearance, Count III challenges the suspension of Mr. Bland's TS-CSI clearance, Count IV challenges Mr. Bland's suspension from work based on his lack of clearance, and Count V challenges whether Mr. Bland was constructively discharged as a result of, among other things, his security clearance suspension. Am. Compl. ¶¶ 46-105. This court does not have jurisdiction to review these claims under *Egan*, *Ryan*, and their progeny. Despite Mr. Bland's efforts to divide his challenge up into separate counts, all four would require the court to question the validity of the same security clearance suspension, which it may *not* do.

Beginning with the clearest application of *Egan*, review of Count III—the security clearance suspension itself—certainly would involve an inquiry into the security concerns that led DHS OSCO to suspend Mr. Bland's clearance. This implicates the predictive judgments of trained security personnel, as forbidden by *Egan*. Indeed, Mr. Bland requests that the court reinstate his Top Secret security clearance. Am. Compl. at 13-14 (Prayer for Relief).

---

[3] In his initial Complaint, Mr. Bland made clear that he was placed on administrative leave with pay. Compl. ¶ 24 [Dkt. #1]. Further, it should be noted that although Counts II-V may implicate either discrimination, retaliation, or both, Count I is a discrimination claim only. Am. Compl. ¶¶ 14-45; *see also id.* at ¶ 47 (alleging retaliation only after being placed on administrative leave).

7

In Count IV, Mr. Bland admits that his employment suspension was predicated on the suspension of his security clearance. Am. Compl. ¶ 84. "[U]nder *Egan* an adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII." *Ryan*, 168 F.3d at 524. Review of Count IV as alleged by plaintiff also would require the court to second-guess the agency's judgment as to what security clearance was required for the job. *See* Am. Compl. ¶ 87 ("At the time the agency suspended Mr. Bland without pay, it did not believe Mr. Bland required a Top Secret security clearance in order to perform the duties of his job.").

Similarly, Count V involves the "circumstances under which" Mr. Bland's security clearance was suspended and cannot be reviewed. *See Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 853 (10th Cir. 2007). In Count V, Mr. Bland claims he was constructively discharged. Am. Compl. at 11. "An actionable constructive discharge claim requires a showing that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that []he had no option but to end [his] employment." *Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 81 (D.D.C. 2009).

Mr. Bland alleges a number of bases to support his claim that FEMA's actions were aimed so that "he would be induced to resign." Am. Compl. ¶ 90-105. Some of the actions, such as "suspending [Mr. Bland] from the payroll," *id.* ¶ 97, clearly are related to the agency's security clearance decision, as described above. And all of the facts alleged for the first time in Count V occurred after Mr. Bland's security clearance was suspended. *Id.* ¶¶ 90-105. DHS OSCO had proposed to revoke Mr. Bland's security

8

clearance when it made the initial suspension decision, but the security clearance was not revoked prior to Mr. Bland's resignation (and still has not been revoked). *Id.* ¶¶ 77, 81. Therefore, any new events alleged in Count V took place while DHS OCSO was considering whether to revoke permanently Mr. Bland's clearance. To determine whether the facts alleged in Count V related to a security clearance investigation or decision, this Court would have to review the basis for DHS OCSO's security clearance decisions, which it cannot do. Review of Count V, therefore, also is barred by *Egan* and its progeny.

Count II is slightly more complicated, because it arises out of the actions of FEMA management, not trained security personnel making predictive judgments. Our Circuit has held that a court *may*, under certain circumstances, review Title VII discrimination claims involving employees who report security concerns but are not themselves the trained personnel who make the security clearance determinations. *Rattigan v. Holder*, 689 F.3d 764, 768 (D.C. Cir. 2012) ("*Egan*'s absolute bar on judicial review convers security clearance-related decisions made by trained Security Division personnel and does not preclude all review of decisions by other FBI employees who merely report security concerns."). However, because the specter of discrimination liability could chill reports of information that those charged with making security judgments may find relevant, this review is limited to discrimination claims based on *knowingly false* reporting, so as "to protect the integrity of the [agency's] security clearance-related responsibilities." *Id.* at 770-71.

9

In Count II, Mr. Bland does not allege that FEMA management employees raised concerns they knew to be false, as would be required to be eligible for review under *Rattigan*. 689 F.3d at 770. Indeed, Mr. Bland does not dispute that the crime FEMA management was concerned about actually took place. Am. Compl. ¶¶ 67-69. In further contrast to *Rattigan*, in which the ultimate security decision was favorable to the plaintiff, *see* 689 F.3d at 766, here, DHS OSCO suspended Mr. Bland's clearance.[4] Therefore, this case does not present circumstances under which this Court may review the claim alleged in Count II.

## CONCLUSION

Thus, for all the foregoing reasons, defendant's Motion to Dismiss [Dkt. #22] is hereby GRANTED and plaintiff's claims are DISMISSED. An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[4] Defendant argues that *Egan* does not prohibit review of constitutional claims. Opp'n to Mot. to Dismiss at 13-14 [Dkt. #24]; *see Ryan*, 168 F.3d at 524 ("[O]ur holding is limited to Title VII discrimination actions and does not apply to actions alleging deprivation of constitutional rights."). Unfortunately for Mr. Bland, he raises only Title VII claims in his Amended Complaint. Am. Compl. ¶¶ 3-4, Prayer for Relief.

10